UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREAT WESTERN INN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-320 |
| | § | |
| CERTAIN UNDERWRITERS AT | § | |
| LLOYDS OF LONDON AND PAUL E. HARRIS, | § | |
| | § | |
| *Defendants*. | § | |

**ORDER**

Pending before the court is plaintiff Great Western Inn's ("Great Western") motion to remand and corresponding request for an oral hearing (Dkt. 8), defendants Certain Underwriters at Lloyds of London (the "Underwriters") motion to file a counterclaim (Dkt. 2), and Great Western's objection to the Underwriters' emergency motion to stay the enforcement of an appraisal award issued to Great Western and corresponding request for an oral hearing (Dkt. 7). Having considered the motions and corresponding filings and the applicable law, the court is of the opinion that no oral hearing is necessary with regard to Great Western's motion to remand (Dkt. 8), which has been fully briefed and should be DENIED, and that the Underwriters' motion to file a counterclaim should be GRANTED. Additionally, the court finds that an oral hearing is appropriate with regard to Great Western's objection to the emergency motion to stay the enforcement of the appraisal award (Dkt. 7), and the court defers ruling on the objection until after the hearing.

**I. BACKGROUND**

Great Western owns a five-building hotel that was damaged during Hurricane Ike. Dkts. 1-1; 2. The hotel was insured by the Underwriters under Lloyds of London Commercial Property Policy

No. 325370. Dkt. 2. Great Western advised Lloyds of London about the loss from Hurricane Ike and requested an investigation under the terms of the insurance policy. Dkt. 1-1. Lloyds of London assigned defendant Paul E. Harris to investigate the loss. *Id.* Great Western claims that Harris "conducted an inadequate and outcome oriented investigation of the loss in a thinly disguised effort to intentionally underpay the benefits" to which Great Western is allegedly entitled and that Harris "negligently and intentionally misrepresented the scope and value of the loss to . . . Lloyds of London." *Id.* Additionally, Great Western contends that the Underwriters received evidence of the true value of the claim but failed and refused to adequately investigate and pay the claim. *Id.*

In April 2009, Great Western demanded appraisal of the claim under the terms of the policy. Dkt. 4. Great Western and the Underwriters each appointed an appraiser. *Id.* The appraisers did not agree on the selection of an umpire, so Great Western filed an *ex parte* complaint in federal court, and the court appointed an umpire. Dkt. 4. In March 2010, Great Western submitted a business interruption claim for $244,464.78, which is in addition to the claim that was pending for the physical damage to the hotel. *Id.* Great Western demanded appraisal of that claim as well. *Id.*

Great Western filed a lawsuit against the Underwriters and Harris in state district court in Harris County on or about September 10, 2010. Dkts. 1-1; 8. The state court petition alleges that the Underwriters appointed Harris to investigate Great Western's claim, and that Harris "negligently and intentionally misrepresented the scope and value of the loss to . . . [the Underwriters]." Dkt. 1.1. Additionally, the petition contends that the Underwriters received evidence of the true value of the claim but continued to "fail and refuse to properly and adequately investigate or pay" the claim. *Id.* The state court petition does not allege a specific amount of damages. *See id.*

On January 5, 2011, the umpire and appraiser issued an Appraisal Award in Great Western's favor for $2,170,000.00. Dkt. 4. The Underwriters contend that this amount is well above the

2

policy's limits and that, contrary to the terms of the policy, the award is a lump sum and does not itemize the damages comprising the number. *Id.* The Underwriters removed the state court case to this court on January 24, 2011 (Dkt. 1), and they filed a motion to file a compulsory counterclaim to set aside the appraisal award on January 25, 2011 (Dkt. 2). On February 1, 2011, they filed their emergency motion to stay the enforcement of the appraisal award, claiming that, under the terms of the policy, they would have to pay the award or deny the claim by February 4, 2011. Dkt. 4. The Underwriters requested that the court stay any obligations arising from the Appraisal Award until after it had a chance to hear evidence on the enforceability of the award. *Id.*

The court granted the motion to stay on February 2, 2011, and it ordered Great Western to respond to the allegations set forth in the Underwriters' motion on or before February 10, 2011. Dkt. 5. On February 10, 2011, Great Western filed a response, in which it argues that, pursuant to Fed. R. Civ. P. 65(b)(1), the Underwriters' application for a stay, which Great Western construes as an application for a temporary restraining order, was defective. *See* Dkt. 7. Specifically, Great Western argues that the motion should have alleged specific facts in an affidavit or a verified complaint showing an immediate or irreparable injury, and it did not do so. *See id.* Additionally, Great Western argues that the court's order issuing the stay failed to state its terms specifically or describe in reasonable detail the act or acts restrained or required. *See id.*

Great Western concedes that the Underwriters' motion raises issues that, if proven, may operate to vacate the appraisal award, but it claims that the Underwriters "should not be judicially absolved of the legal consequences . . . which flow from the breach of its policy or common and statutory laws governing its conduct in the state of Texas." Dkt. 7. Great Western claims that it has been "greatly harmed" by the "wrongful delay" in paying what it alleges it is due under the policy. *Id.* Great Western's lender will not renew or extend its loan due to the "unclear status of the repair

3

and insurance claim," and the City of Pasadena inspection department has shut down over 60% of the property as unsafe for occupancy, which is causing significant reduced property earnings. Dkt. 7 & Exh. A. The City of Pasadena is also allegedly threatening to order the buildings demolished if immediate repairs are not made. Dkt. 7 & Exh. B. Great Western characterizes the Underwriters' emergency motion as an activity calculated to delay its obligations to pay under the terms of the policy. Dkt. 7.

Great Western has also filed a motion to remand. Dkt. 8. Great Western claims that complete diversity of citizenship does not exist because Harris is a resident of Texas and its claims against Harris are separate and distinct from its claims against the Underwriters. Dkt. 8. Additionally, Great Western claims that the removal is untimely because it was not removed within 30 days as required by 28 U.S.C. § 1446(b) and that, though its complaint did not put the Underwriters on notice that the requested damages exceeded the minimum amount in controversy, Great Western provided the Underwriters with an initial property repair claim in the amount of $775,000 in 2008 and their appraiser's estimates, which were in excess of $2,000,000.00, in 2010. *Id.* Moreover, the Underwriters' appraiser allegedly submitted repair estimates that exceeded $75,000.00. *Id.* Thus, Great Western argues that the Underwriters were aware that the claims exceeded the minimum amount in controversy when the lawsuit was filed, and removal would only have been timely if it has occurred within 30 days of the filing of the lawsuit. Finally, Great Western claims that the Underwriters waived the right to remove this case because they engaged in discovery prior to removal. *Id.*

The Underwriters argue that there is no reasonable basis for the court to predict that Great Western may be able to recover against Harris because, "under Texas law, an adjuster hired by an insurer has no relationship with an insured and therefore owes no duty to an insured." Dkt. 10.

Moreover, the Underwriters contend that Great Western has not alleged any specific misrepresentations to make a case against Harris for fraud and that Great Western has not demonstrated a factual fit between its allegations against Harris and a pleaded theory of recovery. *Id.* In regard to the argument that the removal was untimely, the Underwriters claim that they did not have notice of the amount in controversy because the claim was in appraisal when the state court lawsuit was filed, and the appraisal is what determines the amount of loss. *Id.* The Underwriters also argue that estimates received prior to service and before conclusion of the appraisal do not constitute notice of the amount in controversy. *Id.* Finally, the Underwriters claim that they did not waive their right to remove by participating in discovery in state court because the requests they sent before removing the action did not manifest an intent to litigate the merits in state court; rather, the requests were sent as a means of preserving the status quo.

## II. MOTION TO REMAND

The court will first address Great Western's motion to remand. Great Western claims that complete diversity does not exist because Harris is a Texas resident and that Harris cannot remove the case because he never raised a fraudulent joinder defense. The Underwriters claim that Harris is improperly joined and point out that he has not even been served with a citation. Great Western also claims that, even if complete diversity exists, removal was untimely because it was not done within 30 days of the date that the petition was filed in state court. The Underwriters argue that they timely removed as soon as they learned that the claimed damages exceeded the minimum amount in controversy necessary for federal diversity jurisdiction. Great Western's final argument is that the Underwriters waived their right to remove by participating in discovery in the state court action. The Underwriters argue that they merely served a notice of deposition in order to preserve the status quo, which does not constitute a waiver of the right to remove.

5

### A. Lack of a Fraudulent Joinder Defense

Great Western argues that Harris never raised fraudulent joinder as a defense and that, since he joined in the removal, he was required to raise these issues before the actual removal. Dkt. 8. Great Western claims that Harris joined in the removal because the introductory paragraph on the notice of removal states that the Underwriters *and Harris* were filing the notice of removal. Dkt. 1. The Underwriters claim that the inclusion of Harris in the introduction to its notice of removal was a typographical error. Dkt. 10 n.2. In the body of the notice, the Underwriters point out that Harris had not been served. Dkt. 1. They also argue that Harris did not need to join in or consent to removal because he had not been served. *Id.* Additionally, the prayer specifically states that the "Underwriters respectfully request that the above entitled action be removed," without mentioning Harris. Thus, the court accepts the Underwriters' explanation that they included Harris's name in the introductory paragraph in error. Since Harris had not been served and did not join in the removal, he was not required to raise a fraudulent joinder defense before removal.

### B. Improper Joinder

A case may be removed despite a non-diverse defendant if that defendant was improperly joined, meaning the defendant was named improperly for the purpose of destroying diversity. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). As the removing parties, defendants bear the heavy burden of demonstrating improper joinder. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). "Merely to traverse the allegations upon which the liability of the resident defendant is rested, or to apply the epithet '[improper]' to the joinder, will not suffice: the showing must be such as compels the conclusion that the joinder is without right." *Chesapeake & O.R. Co. v. Cockrell*, 232 U.S. 146, 152, 34 S. Ct. 278 (1914); *see also Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

Defendants normally establish improper joinder in either of two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiffs to establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573 (quoting *Travis*, 326 F.3d at 646-47). Here, the parties do not dispute the accuracy of the jurisdictional facts, so the latter is the proper inquiry. The court should not focus on the *probability* that the plaintiff will prevail on the merits against the non-diverse defendant. Rather, the court seeks only a reasonable *possibility* of recovery against the non-diverse defendant. *See Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). "If no reasonable basis of recovery exists, a conclusion can be drawn that the plaintiff's decision to join the local defendant was indeed [improper], *unless* that showing compels dismissal of *all defendants*." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (emphasis in original). In the present case, the appropriate inquiry is whether Great Western has alleged sufficient facts to support any of the claims against Harris. If Great Western has failed to state a valid claim against Harris, then the court must apply the "common defense" rule to determine whether the insufficiency likewise disposes of all defendants. If so, remand is proper. *McDonal*, 408 F.3d at 183; *Smallwood*, 385 F.3d at 574.

The Fifth Circuit, in *Smallwood v. Illinois Central Railroad Co.*, endorsed a Rule 12(b)(6)-type inquiry as the preferred method of determining whether joinder is proper. *Smallwood*, 385 F.3d at 573. Under the Rule 12(b)(6)-type inquiry, "a complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Jamarillo v. City of McAllen, Texas*, 306 Fed. App'x 140, 143 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)) (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Id.*

7

The Underwriters claim that Great Western cannot maintain an valid cause of action against Harris. The petition specifically alleges claims against Harris for negligence, negligent misrepresentation, fraud, fraudulent misrepresentation, fraudulent inducement, fraudulent concealment, and constructive fraud. Dkt. 1-1. The only factual allegations about Harris in the petition deal with his investigation of the claim and his representation to Lloyds of London regarding the scope and value of Great Western's loss. *See* Dkt. 1-1 ¶ 13. These allegations are not sufficient to state a claim for which relief may be granted against Harris for any of the causes of action contained within Great Western's petition.

**1.    Negligence.**

Under Texas law, an independent insurance adjuster owes no duty of good faith and fair dealing to the insured.[1] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 282-83 (5th Cir. 2007); *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698 (Tex. 1994). Moreover, "absent a contractual relationship between the insured and the adjuster, the adjuster [cannot] be liable to the insured for improper investigation and settlement advice, 'regardless of whether [the insured] phrased his allegations as negligence, bad faith, breach of contract, [or] tortious interference . . . .'"[2] *Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 937-38 (Tex. App.–Dallas 2007, no pet.) (quoting *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 907, 917 (Tex. App.–Dallas 1997, writ denied), *overruled on other grounds, Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122-23 (Tex. 2001)). Here, there is no

---

[1] Great Western indicates that Harris conducted an "*independent* (yet inadequate) investigation." Dkt. 8 (emphasis added).

[2] The court notes that an independent agent may be held liable for claims under the Texas Insurance Code. *See Gasch*, 491 F.3d at 283 & n.20; *Corinthian Three Partnership v. OneBeacon Ins. Co.*, No. 4:10-3926, 2011 WL 240395, at *2 (S.D. Tex. Jan. 24, 2011) (Atlas, J.) (holding that the defendants had not shown that the plaintiff could not prevail on a claim that an independent adjustor violated Chapter 541 of the Texas Insurance Code). However, Great Western has not asserted any statutory claims against Harris. *See* Dkt. 1-1.

allegation of a contractual relationship between Great Western and Harris, and Great Western's negligence claim centers around Harris's investigation of Great Western's damages. Thus, Great Western's negligence claim fails as a matter of law.

### 2. Negligent Misrepresentation.

The elements of negligent misrepresentation, under Texas law, are "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). The misrepresentations alleged in Great Western's petition were made *to Lloyds of London*, not to Great Western. *See* Dkt. 1-1 ("Defendant, Harris, negligently and intentionally misrepresented the scope and value of the loss to Defendant, Lloyds of London, with the intent of harming Plaintiff."). Great Western does not assert that it relied on the misrepresentations Harris allegedly made to Lloyds of London. Great Western therefore has not adequately pleaded that it suffered "pecuniary loss by justifiably relying on the representation." Accordingly, Great Western's negligent misrepresentation claim against Harris fails as a matter of law.

### 3. Fraud, Fraudulent Misrepresentation, and Fraudulent Concealment.

Under Texas law, "a party commits fraud by (1) making a false, material misrepresentation (2) that the party either knows to be false or asserts recklessly without knowing of its truth (3) with the intent that the misrepresentation be acted upon, (4) and the person to whom the misrepresentation is made acts in reliance upon it, and (5) is injured as a result." *Rivers v. Charlie Thomas Ford, Ltd.*, 289 S.W.3d 353 (Tex. App.–Houston [14th Dist.] 2009, no pet h.) (emphasis

9

added). "Misrepresentation and fraudulent concealment are not separate causes of action" under Texas law. "Instead, a misrepresentation is an essential element of common law fraud" and "[c]oncealment by silence, or fraudulent concealment, is a type of misrepresentation." *Nelson v. Regions Mortg., Inc.*, 170 S.W.3d 858, 862 (Tex. App.–Dallas 2005, no pet.) (citations omitted). So, to state a claim for fraud, misrepresentation, or fraudulent concealment, Great Western must allege that "the person to whom the misrepresentation [was] made . . . [was] injured as a result." Great Western alleges that Harris misrepresented the damages *to Lloyds of London*, not to Great Western. Great Western has not alleged that Lloyds of London was injured as a result. Moreover, even if Great Western had alleged that Harris misrepresented the damages to Great Western, Great Western does not allege that it took any actions in reliance on Harris's estimate. Thus, Great Western has not alleged sufficient facts to state a claim against Harris for fraud, fraudulent misrepresentation, or fraudulent concealment.

### 4. Fraudulent Inducement.

To state a claim for fraudulent inducement under Texas law, a plaintiff must establish "reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment." *Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center East, Inc.*, 290 S.W.3d 554, 566 (Tex. App.–Dallas 2009, no pet.). Great Western has not alleged that Harris's representations caused it to act or fail to act. Thus, Great Western fails to state a claim for fraudulent inducement against Harris.

### 5. Constructive Fraud.

"Constructive fraud 'encompasses those breaches that the law condemns as 'fraudulent' merely because they *tend* to deceive others, violate confidences, or cause injury to public interests, the actor's mental state being immaterial.'" *In re Estate of Kuykendall*, 206 S.W.3d 766, 770 (Tex.

10

App.–Texarkana 2006, no pet.) (quoting *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.–Austin 1988, no writ)). However, constructive fraud occurs only if the defendant violated a fiduciary duty owed to the plaintiff or where the defendant and plaintiff had a confidential relationship wherein the defendant trusted and relied on the plaintiff, "whether the relationship is moral, social, familial, or merely a personal one." *Id.* at 771 (citing *Crim Truck & Tractor Co. V. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds* Tex. Rev. Civ. Stat. Ann. art. 4413, § 6.06(e) (Vernon 2001)). "However, such a relationship is an extraordinary one and will not be lightly created"; rather, there must have been some "such relationship prior to and apart from the transaction at issue between the parties." *Id.* There is nothing in Great Western's petition suggesting that it had such a relationship with Harris. Thus, Great Western does not state a claim for constructive fraud.

  In sum, Great Western has failed to show that a reasonable basis of recovery exists with regard to the claims asserted against Harris in its state court petition. This insufficiency, however, does not negate the claims against the Underwriters, so remand is not warranted under the common defense rule. Thus, joinder of the claims against Harris was improper. Without claims against Harris, there is complete diversity of citizenship. Thus, Great Western's motion to remand based on lack of diversity of citizenship is DENIED. Moreover, Great Western's claims against Harris are DISMISSED. *See Plaquemines Parish Sch. Bd. v. Norris Ins. Consultants*, 281 Fed. App'x 338, 339 (5th Cir. 2008) (per curium) (improperly joined party should be dismissed from case so that diversity jurisdiction may be asserted over the remaining parties).

## C.     Timeliness of Removal

Great Western claims that the Underwriters did not timely remove as required by 28 U.S.C. § 1446(b). Under 28 U.S.C. § 1446(b), a notice of removal

> shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

The Underwriters did not remove within thirty days of receipt of the petition, as required by the first paragraph on § 1446(b). However, the Underwriters claim that the petition did not allege an amount in controversy and that, since the claim was still in appraisal when the petition was filed, it did not know that the amount in controversy exceeded $75,000 per defendant until it received the Appraisal Award. Dkt. 10. It removed the case within thirty days of receipt of the Appraisal Award pursuant to the requirements of the second paragraph of § 1446(b). Dkts. 1, 10.

Great Western claims that the removal is untimely because, while the petition did not allege an amount in controversy, the Underwriters already knew that the amount in controversy exceeded $75,000 when Great Western filed the petition. Dkt. 8. Specifically, Great Western alleges that it provided the Underwriters with an initial property repair claim in the amount of $775,000 in 2008 and their appraiser's estimates, which were in excess of $2,000,000.00, in 2010. *Id.* Great Western also alleges that the Underwriters' appraiser submitted repair estimates that exceed $75,000.00. *Id.*

Great Western's argument is precluded by *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992). In *Chapman*, the Fifth Circuit adopted a "bright line rule requiring the plaintiff, if he wishes the thirty-day time period to run from the defendant's receipt of the initial pleading, to place

in the initial pleading a specific allegation that damages are in excess of the federal jurisdictional amount." 969 F.2d at 163. The *Chapman* plaintiff argued that the defendant knew that the amount in controversy exceeded the minimum jurisdictional amount prior to receiving the initial pleading because the defendant received medical bills and a demand letter before the case was filed indicating that the plaintiff was seeking more than the minimum amount in controversy. *Id.* The *Chapman* plaintiff supported this argument with a case from the federal district court for the Southern District of Iowa in which the court held that a pre-suit demand letter was "'other paper' for the purposes of the second paragraph of § 1446(b) from which the defendant could ascertain that the case was removable." *Id.* at 164 (discussing *Cent. Iowa Agri-Sys. v. Old Heritage Advertisers & Publishers, Inc.*, 727 F. Supp. 1304 (S.D. Iowa 1989)). The Fifth Circuit declined to follow the Iowa district court case, reasoning that the plain language of § 1446(b) "requires that if an 'other paper' is to trigger the thirty-day period of the second paragraph of § 1446(b), the defendant must receive the 'other paper' only after it receives the initial pleading." *Id.* Thus, the court held that the removal, which was within thirty days of the defendant's receipt of an interrogatory answer stating the plaintiff had suffered damages in excess of $800,000, was timely. *Id.*

Here, like in *Chapman*, Great Western claims that the Underwriters received documents demonstrating that the amount in controversy was greater than $75,000 before the petition was filed. In accordance with the Fifth's Circuit's clear precedent in *Chapman*, these documents cannot be construed as "other paper" triggering the right of removal. Thus, the only "other paper" indicating that the amount in controversy exceeds the minimum jurisdictional limit on the record is the Appraisal Award. The Underwriters timely removed the case within thirty days of receipt of the Appraisal Award. Thus, the removal was timely, and Great Western's motion to remand on the basis of untimeliness is DENIED.

13

**D.     Waiver**

Great Western claims, without citing authority, that the Underwriters waived their right to removal by engaging in discovery prior to removal.  Specifically, the Underwriters served a notice of intent to take the deposition on written questions of Great Western's appraiser and umpire on January 12, 2011, which is after they had received the Appraisal Award on January 5, 2011.  However, "the right to removal is not lost by participating in state court proceedings short of seeking an adjudication on the merits."  *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 428 (5th Cir. 2003).  The Underwriters state that their notice of intent to take the deposition on written questions of the appraiser and umpire, which also contained a request that these individuals retain relevant documents, was simply made to preserve the status quo.  Dkt. 10 & Exh. 4, 5.  A waiver of the right to remove "must be clear and indicate a specific, positive intent to proceed in state court."  *Air Starter Components, Inc. v. Molina*, 442 F. Supp. 2d 374, 379 (S.D. Tex. 2006) (citation and internal quotation omitted).  The Underwriters' service of a notice of an intent to take the depositions in order to preserve the status quo does not "indicate a specific, positive intent to proceed in state court."  Thus, the Underwriters did not waive their right to remove, and Great Western's motion to remand on that basis is DENIED.

## II. MOTION FOR LEAVE TO FILE A COUNTERCLAIM

The court has reviewed the Underwriters' motion to file a counterclaim (Dkt. 2) and applicable law and finds good cause to GRANT the Underwriters' motion to file a counterclaim.

## III. OBJECTIONS TO EMERGENCY MOTION TO STAY

Great Western has filed objections to the order the court issued staying the enforcement of the Appraisal Award until after the validity could be confirmed.  The court finds that an oral hearing would be of benefit in its consideration of whether a stay and/or injunction is appropriate.  The court

will hold a hearing during which the parties may address this issue on April 11, 2011 at 1:30 p.m. in Courtroom 9D, 515 Rusk Avenue, Houston, Texas.  The parties may filed supplemental briefing prior to the hearing, but the supplemental briefing shall be filed on or before April 6, 2011.

### IV. CONCLUSION

Great Western's motion to remand (Dkt. 8) is **DENIED**.  Great Western's claims against Harris are **DISMISSED WITH PREJUDICE**.  The Underwriters' motion to file a counterclaim (Dkt. 2) is **GRANTED**.  Great Western's objections to the court's order entering an emergency stay (Dkt. 7) is set for a hearing, as detailed in Part III, *supra*.

It is so ORDERED.

Signed at Houston, Texas on March 24, 2011.

_____
Gray H. Miller
United States District Judge